UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 5, 2013

LETTER TO COUNSEL:

    RE: *Paula Magill v. Commissioner, Social Security Administration*;
           Civil No. SAG-12-3558

Dear Counsel:

    On December 4, 2012, the Plaintiff, Paula Magill, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 16, 19). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

    Ms. Magill filed her claim for benefits on June 23, 2009, originally alleging disability beginning on July 24, 2007.[1] (Tr. 126-31). Her claim was denied initially on December 24, 2009, and on reconsideration on September 23, 2010. (Tr. 52-55, 58-59). A hearing was held in November, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 25-44). Following the hearing, on January 10, 2012, the ALJ determined that Ms. Magill was not disabled during the relevant time frame. (Tr. 10-24). The Appeals Council denied Ms. Magill's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

    The ALJ found that Ms. Magill suffered from the severe impairments of lumbar disc disease, asthma, depression, and obesity. (Tr. 14). Despite these impairments, the ALJ determined that Ms. Magill retained the residual functional capacity ("RFC") to:

> lift 5 pound [sic] frequently and 10 pounds occasionally. She requires a sit/stand option. She is limited to unskilled work because her depression inhibits concentration.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Magill could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 19-20).

---

[1] She later amended her onset date to her date of filing, June 23, 2009. (Tr. 39).

Ms. Magill presents several arguments on appeal: (1) that the ALJ did not present a function-by-function RFC specifically dealing with her ability to sit and stand; (2) that the ALJ lacked a medical source for the sit/stand option; (3) that the ALJ's mental RFC was insufficiently specific; (4) that the ALJ assigned inadequate weight to the opinion of her psychiatrist, Dr. Edouard; and (5) that the hypothetical to the VE was incomplete. Each argument lacks merit.

First, Ms. Magill contends that the physical RFC set forth by the ALJ does not specifically indicate how long she can sit or stand. Pl. Mot. 17. It is true that the RFC does not include a restriction to any particular exertional category of work, which typically indicates limitations on the total amount of time a claimant can sit or stand. However, Ms. Magill's RFC contains a sit/stand option. (Tr. 16). In the hypothetical to the VE, the ALJ confirmed that "sit/stand option" means "the ability to sit or stand whenever they choose." (Tr. 42). In light of the inclusion of the sit/stand option, which would allow Ms. Magill unfettered discretion regarding whether to sit or stand, the ALJ did not have to make more specific findings about her maximum daily capacity for sitting or standing. Moreover, likely as a result of the sit/stand option, the VE testified as to at least one job at the sedentary level of exertion. (Tr. 43).

Ms. Magill next argues that the ALJ did not cite to any medical report establishing a need for a sit/stand option. Pl. Mot. 18. However, an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Felton-Miller v. Astrue*, 459 F.App'x 226, 230-31 (4th Cir. 2011) (determining that an ALJ need not obtain an expert medical opinion as to an RFC, but should base an RFC on all available evidence). The RFC determined by the ALJ in this case, which allows Ms. Magill the maximum flexibility in her physical position during the workday, takes into account all of the evidence cited by the ALJ, including the generally normal results of the consultative examination by Dr. Zamani, (Tr. 16-17, 412); the objective findings on diagnostic testing, (Tr. 16, 17); and Ms. Magill's testimony regarding her discomfort, (Tr. 16). Moreover, as the ALJ noted, "the record does not contain any opinions from treating or examining physicians indicating that the claimant has physical limitations greater than those determined in this decision." (Tr. 18). Accordingly, the ALJ's RFC is consistent with the medical evidence of record.

Ms. Magill's third argument is that the ALJ made insufficient findings regarding her mental RFC. Pl. Mot. 20-22. According to Ms. Magill, the limitation to "unskilled work" does not adequately incorporate the more specific findings required by Social Security Ruling 96–8p." Pl. Mot. 21. "Unskilled work" is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). The Fourth Circuit has found hypotheticals and RFC statements incorporating "unskilled work" to adequately capture mental functional capacity. *See Fisher v. Barnhart,* 181 F. App'x 359, 364 (4th Cir. 2006) (finding "unskilled work" to be a term of art that "fairly conveyed" the plaintiff's mental impairments to the VE); *Bentley v. Chater,* 113 F.3d 1231 (4th Cir. 1997) (finding an RFC that accounted for a plaintiff's mental impairments with a limitation to "unskilled work" sufficient). Therefore, the ALJ's use of "unskilled work" in his RFC

determination and hypothetical question was not in error. Furthermore, Ms. Magill contends that the ALJ failed to address limitations found by the SSA consultant, Dr. Woods. Pl. Mot. 21-22 (citing Tr. 293-94). That argument fails because the relevant portion of Dr. Woods's opinion is not Section I, which sets forth a series of "check the box" rankings, but Section III, which provides a narrative functional capacity assessment. *See* Program Operations Manual System DI 24510.060B (Mental Residual Functional Capacity Assessment). Because Section I does not include the requisite level of detail to inform the ALJ's opinion, as this Court has repeatedly held, an ALJ need not address each of the Section I limitations. *See, e.g., Andrews v. Astrue,* Civil No. SKG–09–3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so."). The RFC determined by the ALJ comported with the Section III findings by Dr. Woods, who concluded:

> Residual capacity finds that the claimant functions in a generally independent fashion and can meet various personal needs from a mental standpoint. The claimant is capable of completing daily living functions within the constraints of mental and cognitive status. This individual manages within a basic routine. A/C fluctuates at times due to the effects of the conditions. The claimant appears to have the ability to interact and relate with others socially. The claimant can adequately negotiate in the general community. The claimant retains the capacity to perform work-related tasks from a mental health perspective.

(Tr. 295). The limitation to unskilled work, to address Ms. Magill's fluctuating concentration, therefore accords with Dr. Woods's opinion. (Tr. 16).

Fourth, Ms. Magill argues that the ALJ assigned inadequate weight to the opinion of her treating psychiatrist, Dr. Edouard. Pl. Mot. 22. A treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In fact, if a doctor's own notes provide insufficient or contradictory support for the doctor's conclusions, an ALJ may properly assign less than controlling weight. *See Forsyth v. Astrue*, No. CBD092776, 2011 WL 691581, at *4 (D. Md. Feb.18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with his own medical records); *Cramer v. Astrue*, No. 9:10-1872-SB-BM, 2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes"); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). In this case, the ALJ found Dr. Edouard's opinion to be "at variance with testimony and medical evidence of record." (Tr. 18). Specifically, the ALJ cited to records from Dr. Edouard's own office that "described

the claimant's depressive symptoms as improving with medicinal compliance."[2] (Tr. 18). I concur that the treatment notes show significant improvement at times when Ms. Magill is fully compliant and worsening when she is not compliant. *See, e.g.,* (Tr. 311) (noting symptoms of bipolar disorder because of non-compliance); (Tr. 505-06) (noting worsening symptoms due to a changed living situation and "partial compliance" with treatment); (Tr. 509) (noting a failure to attend a psychiatric appointment, resulting in a change in psychiatrist). Moreover, Ms. Magill has not cited any treatment notes to corroborate the severe limitations Dr. Edouard asserts in his opinion, and Dr. Edouard did not indicate the source for his comments. Accordingly, substantial evidence supports the ALJ's assignment of weight.

Finally, Ms. Magill asserts that the hypothetical presented to the VE was incomplete, largely for the same reasons she asserted that the RFC was deficient. Pl. Mot. 24-27. However, the ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir.1986)). As noted above, substantial evidence supported the RFC found by the ALJ, and because the hypothetical matched the RFC, the hypothetical was sufficient. Ms. Magill further contends that the ALJ failed to ask the VE if her testimony comported with the Dictionary of Occupational Titles ("DOT"). However, the ALJ instructed the VE, "I'll assume that your answers will be consistent with the dictionary [of occupational titles] ("DOT") unless you indicate something different or discrepancies." (Tr. 42). The VE did not note any inconsistencies or discrepancies with the DOT. (Tr. 42-43). Ms. Magill posits that, because the DOT contains no sit/stand options, the VE's testimony was therefore deficient. I concur with the reasoning of other Courts in finding that the fact that the DOT does not mention a sit/stand option does not mean that VE testimony about a sit/stand option presents a conflict, discrepancy, or inconsistency with the DOT. *See, e.g., Amick v. Colvin,* No. 5:12-0922, 2013 WL 4046349, at *5 (S.D.W.Va. Aug. 8, 2013) (finding no conflict between the DOT, which does not address a sit/stand option, and VE testimony about jobs that will accommodate a sit/stand option); *Queen v. Astrue,* No. TMD-10-3364, 2012 WL 1016822, at *3 n.1 (D. Md. March 23, 2012) ("The common definition of 'to conflict' is 'to show antagonism or irreconcilability.' Because the DOT does not address the availability of a sit/stand option, it was perforce not irreconcilable with the [VE's] testimony.") (citations omitted).[3]

---

[2] It is not evident from the records when Dr. Edouard began treating Ms. Magill, because most of the psychiatric records other than Dr. Edouard's opinion are signed by "Craig Boatman, Psy.D." *See, e.g.,* (Tr. 312-13, 316-18, 505-06, 509-10). At the hearing, two months after Dr. Edouard issued his opinion, Ms. Magill testified that she had just started to see "Dr. Edward or something like that" at the clinic. (Tr. 32). Although Ms. Magill consistently obtained treatment from the Highlandtown Community Health Center/Highlandtown Health Living Center, where Dr. Boatman and Dr. Edouard are employed, it is unclear whether Dr. Edouard had any relationship with Ms. Magill at the time of his opinion, (Tr. 548-50), particularly the type of longitudinal relationship characteristic of a treating physician.

[3] Ms. Magill cites to "Varley v. HHS, 820 F.2d 777" for the proposition that the conflict between the VE testimony and the DOT precludes the ALJ from relying on the testimony as substantial evidence. Pl. Mot. 23. The case citation is both incomplete and imprecise, leaving uncertainty as to what portion of the

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 16) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 19) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                        Sincerely yours,

                                        /s/

                                        Stephanie A. Gallagher
                                        United States Magistrate Judge

---

case Ms. Magill believes lends support to her view. However, a complete review of the *Varley* case reveals no mention of the DOT.